UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

In re:                                              )        Bankr. No. 13-10118
                                                    )        Chapter 11
NORTHERN BEEF PACKERS                               )
LIMITED PARTNERSHIP                                 )
Tax ID/EIN 26-2530200                               )
                                                    )
                Debtor.                             )
                                                    )
SDIF LIMITED PARTNERSHIP 6                          )        Adv. No. 13-1016
and SDIF LIMITED PARTNERSHIP 9,                     )
South Dakota Limited Partnerships                   )
                                                    )
                Plaintiffs                          )
-vs-                                                )
                                                    )
NORTHERN BEEF PACKERS                               )
LIMITED PARTNERSHIP;                                )
WHITE OAK GLOBAL ADVISORS, LLC;                     )
OFFICIAL COMMITTEE OF                               )
UNSECURED CREDITORS OF                              )
NORTHERN BEEF PACKERS LIMITED                       )
PARTNERSHIP;                                        )        DECISION RE:  DEFENDANT
SCOTT OLSON DIGGING, INC.;                          )        WHITE OAK GLOBAL ADVISORS,
EPOCH STAR LIMITED;                                 )        LLC'S MOTION FOR JUDGMENT
NORTHWEST PIPE FITTINGS, INC.;                      )        ON THE PLEADINGS OR,
HOUSE OF GLASS, INC.;                               )        IN THE ALTERNATIVE, FOR
CLIMATE MAKERS, INC.;                               )        PARTIAL SUMMARY JUDGMENT
DIAMOND VOGEL PAINTS;                               )
AXIS CAPITAL, INC.;                                 )
BEST BUSINESS PRODUCTS;                             )
CRYOVAC, INC.;                                      )
FARNAM STREET FINANCIAL, INC.;                      )
LENOVO FINANCIAL SERVICES;                          )
MARCO;                                              )
VAR RESOURCES;                                      )
US BANK EQUIPMENT FINANCE;                          )
JARVIS PRODUCTS CORPORATION;                        )
DAEWOO INTERNATIONAL                                )
AMERICA CORP.;                                      )
TWIN CITY HIDE, INC.;                               )
WELLS FARGO BANK, NATIONAL                          )
ASSOCIATION;                                        )

MADGID GLOVE & SAFETY            )
MFG. CO. LLC;                    )
HARMS OIL;                       )
WESTERN EQUIPMENT FINANCE;       )
A-D SERVICES INC.;               )
ROCKTENN CP LLC;                 )
and BROWN COUNTY, SOUTH DAKOTA   )
                                 )
                    Defendants.  )

The matter before the Court is Defendant White Oak Global Advisors, LLC's Motion for Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) with Respect to the Sold Assets, or in the Alternative, for Partial Summary Judgment. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Court enters these findings and conclusions pursuant to Fed.R.Bankr.P. 7052. For the reasons discussed below, the Court will grant partial summary judgment with respect to the interests of Plaintiffs SDIF Limited Partnership 6 and SDIF Limited Partnership 9 and Defendants Axis Capital, Inc., Northern Beef Packers Limited Partnership, Farnam Street Financial, Inc., Harms Oil, Magid Glove & Safety Mfg. Co. LLC, Official Committee of Unsecured Creditors, RockTenn CP, LLC, Twin City Hide, Inc., Western Equipment Finance, and VAR Resources in the Operating Assets.

I.

Northern Beef Packers Limited Partnership ("Debtor") filed a chapter 11 petition in bankruptcy (Bankr. No. 13-10118, doc. 1). It is not reorganizing. Most of Debtor's assets,[1] denominated the "Operating Assets,"[2] were sold at auction (bankr. docs. 598

---

[1]The only estate assets that have been identified at this time are the Operating Assets (bankr. doc. 598), some equipment that was specifically excluded from the Operating Assets but may be subject to purchase money security interests (bankr. doc. 598, Exhibit C), and a $900,000.00 certificate of deposit that, according to

and 621).  White Oak Global Advisors, LLC ("White Oak"), one of Debtor's secured creditors and a defendant in this adversary proceeding, was the successful bidder. The sale order provided, in pertinent part (bankr. doc. 621):

> IT IS HEREBY ORDERED White Oak Global Advisors, LLC is the Successful Bidder, with a credit bid of $39,500,000.00 and a cash bid of $4,847,160.00, for a total bid of $44,347,160.00.  The final cash portion of White Oak Global Advisors, LLC's total bid will be determined after all issues regarding the validity, priority, and extent of liens on the Operating Assets sold are resolved.

> . . . .

> IT IS FURTHER ORDERED this sale of the Operating Assets is, pursuant to 11 U.S.C. § 363(b) and (f), free of the liens and other encumbrances set forth under the column labeled "Lien Holder of Record" in part II., "Property Included in Operating Assets," of Debtor's Summary of Liens, Interests, and Encumbrances in Assets of the Estate (doc. 549), and these liens and other encumbrances shall attach to the sale proceeds in the order of their original priority.  The Court will, by separate order or orders, make a final determination of the validity, priority, and extent of liens and other encumbrances against the Operating Assets.

> . . . .

> IT IS FURTHER ORDERED . . . [n]o proceeds from the auction sale shall be distributed until the Court has determined the validity, priority, and extent of liens and other encumbrances against the Operating Assets, and the Court has authorized a distribution by a separate order or orders.

---

Debtor, had been pledged to Plains Commerce Bank to support a letter of credit to the South Dakota Animal Industry Board (bankr. doc. 321) but has now been released (Debtor's exhibits 2 and 3 received during a hearing on September 26, 2013 in Bankr. No. 13-10118).  Under a financing agreement approved in Debtor's bankruptcy case, the $900,000.00 is to be transferred to the Official Committee of Unsecured Creditors to be used to pay priority wage claims (bankr. docs. 360 and 435).

[2]In the instant motion, Defendant White Oak Global Advisors, LLC renamed the Operating Assets the "Sold Assets."  To foster continuity from the sale-related motions and orders in Debtor's Bankr. No. 13-10118, where Operating Assets was defined (bankr. doc. 598), the Court will continue using Operating Assets.

The sale has not yet closed.

Two of Debtor's other secured creditors, SDIF Limited Partnership 6 and SDIF Limited Partnership 9 (collectively "Plaintiffs"), initiated this adversary proceeding so the Court could sort out the extent of various parties' liens and other encumbrances against Debtor's assets and determine their priority (Adversary Proceeding doc. 1). A handful of defendants answered. Defendant Scott Olson Digging, Inc. ("Scott Olson") was one of the answering defendants; it also counterclaimed and crossclaimed, arguing its mechanic's lien against Debtor's real property was second in priority only to Defendant Brown County, South Dakota's ("Brown County") lien for unpaid real estate taxes and special assessments (adv. doc. 38).

The Court has entered an order directing the entry of a judgment of default against certain defendants regarding Plaintiffs' complaint (adv. doc. 135). Pursuant to that order, the judgment entered in this adversary proceeding will provide:

(1) Defendants Lenovo Financial Services, Marco, US Bank Equipment Finance, and Best Business Products are holders of a valid bailment or lease agreement;

(2) the liens or other encumbrances held by Defendants Diamond Vogel Paints, Climate Makers, Inc., Northwest Pipe Fittings, Inc., and House of Glass, Inc. are junior and inferior to all other liens or other encumbrances of the other parties to this action as pertains to the real property owned by Debtor-Defendant Northern Beef Packers Limited Partnership; and

(3) Defendants A-D Services Inc., Jarvis Products Corporation, and Epoch Star Limited did not hold a claim against Debtor-Defendant on the petition date and none hold a secured position with respect to any property of the bankruptcy estate, Bankr. No. 13-10118.

Though Defendants Magid Glove & Safety Mfg. Co. LLC[3] ("Magid Glove"), Western Equipment Finance[4] ("Western Equipment"), and VAR Resources ("VAR") defaulted by failing to answer Plaintiffs' complaint, they were not included in the default order because Plaintiffs had sought "default" relief as to these defendants that differed from the relief requested in the complaint.

Pursuant to a court-approved stipulation between Plaintiffs and Defendant Daewoo International America Corp. ("Daewoo"), the judgment entered in this adversary proceeding will provide Defendant Daewoo does not hold a secured interest in any of Debtor's assets but does hold a general unsecured claim (adv. doc. 142). Pursuant to Plaintiffs' motion, Defendant Wells Fargo Bank, National Association ("Wells Fargo") was dismissed, with prejudice, from the adversary proceeding (adv. doc. 143).[5]  Plaintiffs, Defendant Scott Olson, and Defendant Cryovac, Inc. also entered into a stipulation, which the Court approved (adv. doc. 176).  Under this order, the judgment entered in this adversary proceeding will provide Defendant Cryovac, Inc. does not hold a lien or other encumbrance on any property of the bankruptcy estate.

Plaintiffs defaulted as to Defendant Scott Olson's counterclaim, and Defendant Scott Olson obtained an order providing its claim, in an amount yet to be determined,

_____

[3]According to its proof of claim, the correct spelling of this creditor's name is "Magid" (proof of claim 107-1).

[4]Based on its proof of claim, this creditor's correct name is actually Western Equipment Finance, Inc. (proof of claim 19-1).

[5]Gao Changchun filed what he considered a third party complaint (adv. doc. 33). The pleading was later dismissed (adv. doc. 129).

that is secured by Debtor's real property is superior to Plaintiffs' claims secured by the real property (adv. doc. 172). Several defendants also defaulted on Defendant Scott Olson's crossclaim, and Defendant Scott Olson obtained an order that provides its secured claim on Debtor's real property is superior to the secured claims, if any, held by Defendants A-D Services Inc., Axis Capital, Inc. ("Axis"), Best Business Products, Climate Makers, Inc., Diamond Vogel Paints, Farnam Street Financial, Inc., House of Glass, Inc., Jarvis Products Corporation, Lenovo Financial Services, Magid Glove, Marco, Northwest Pipe Fittings, Inc., RockTenn CP, LLC ("RockTenn"), Twin City Hide, Inc., US Bank Equipment Finance, VAR, and Western Equipment (adv. doc. 173). On Defendant Scott Olson's motion, Defendants Daewoo and Wells Fargo have been dismissed from Defendant Scott Olson's crossclaim (adv. doc. 197). Defendant Scott Olson reached a court-approved accord with Defendant Brown County that recognizes an agreement between Brown County and White Oak in Debtor's main case for the payment of the county's tax claims and acknowledges Brown County's tax liens and special assessments have first priority on Debtor's real property (bankr. docs. 735-1, 735-2, and 770, and adv. docs. 168, 169, and 200).

After service issues arose, the orders defaulting Defendant Epoch Star Limited as to Plaintiffs' complaint and Defendant Scott Olson's crossclaim were vacated as to Defendant Epoch Star Limited only (adv. doc. 201). Plaintiffs also moved to dismiss Defendant Epoch Star Limited, saying Defendant Epoch Star Limited had assigned its security agreement and mortgage to Plaintiff SDIF Limited Partnership 6, had terminated any financing statements it had, and was not owed any money on the petition date (adv. doc. 187). No party in interest objected to Plaintiffs' motion, and

Defendant Epoch Star was dismissed without prejudice (adv. doc. 211).

In the midst of these various defaults and settlements and attendant motions, notices, and response periods, Defendant White Oak filed a Motion for Judgment on the Pleadings Pursuant to [Fed.R.Civ.P.] 12(c) with Respect to the [Operating] Assets, or in the Alternative, for Partial Summary Judgment (adv. doc. 107).   Therein, Defendant White Oak listed each co-defendant and opined why each had no pre-petition claim against Debtor, no longer had any encumbrance on the Operating Assets that were being sold, or had an encumbrance on the Operating Assets that was inferior to its encumbrance.

Plaintiffs responded to Defendant White Oak's motion, generally concurring with Defendant White Oak's assessment of the various encumbrances (adv. doc. 141). Defendant Axis filed the only objection to Defendant White Oak's motion (adv. doc. 149).  Defendant Axis identified those facts set forth by Defendant White Oak that it disputed,[6] incorporated by reference its proofs of claim and some earlier pleadings, and argued it has a blanket lien on Debtor's equipment, in addition to rights or a security interest in certain equipment Debtor had leased or purchased from Defendant Axis. Defendant White Oak filed a reply to Defendant Axis's objection (adv. doc. 151).

II.

If a party bringing a motion for judgment on the pleadings goes beyond the pleadings to make its record, the motion for judgment on the pleadings must be

---

[6]Defendant Axis should have filed, with its response and brief, a *separate* statement of the material facts it disputed, *see* Bankr. D.S.D. R. 7056-1(a)(2), but its incorporation of that information in its response is not fatal.

treated as a motion for summary judgment.  Fed.R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(d).  Here, Defendant White Oak has asked the Court to consider some pleadings in light of the results of the Operating Assets auction and also to consider a transcript of the December 5, 2013 hearing when the auction was held in Debtor's bankruptcy case.  Because the sale documents and the transcript go beyond the pleadings in this adversary proceeding, the Court is, under Rule 12(d), prudently treating Defendant White Oak's motion as one for partial summary judgment, as was reflected in the attendant scheduling order (adv. doc. 110).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(a).  An issue of material fact is *genuine* if it has a real basis in the record.  *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein).  A genuine issue of fact is *material* if it might affect the outcome of the case.  *Id.* (quotes therein).  The matter must be viewed in the light most favorable to the party opposing the motion.  *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997).

The movant meets its burden if it shows the record does not contain a genuine issue of material fact and it points out that part of the record that bears out its assertion.  *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Coop., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)).  No defense to an insufficient showing is required.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.

If the movant meets its burden, however, the nonmovant, to defeat the motion,

"must advance specific facts to create a genuine issue of material fact for trial." *Bell*,
106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d
1202, 1211 (8th Cir. 1995)).  The nonmovant must do more than show there is some
metaphysical doubt; the nonmovant must show it will be able to put on admissible
evidence at trial proving its allegations. *Bell*, 106 F.3d at 263 (citing *Kiemele v. Soo
Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*,
52 F.3d 734, 737 (8th Cir. 1995)).

III.

Plaintiffs

Plaintiffs do not dispute Defendant White Oak's secured claim on the Operating
Assets is superior to their secured claims to the extent of the parties' $45,000,000.00
subordination agreements.  Defendant White Oak will be granted summary judgment
to that extent.

Debtor-Defendant

That Debtor does not hold any encumbrance on, but instead is the seller of, the
Operating Assets is not disputed.  Defendant White Oak will be granted summary
judgment to that extent.

Defendant Official Committee of Unsecured Creditors

No one disputes that Defendant Official Committee of Unsecured Creditors, as
a post-petition entity, does not hold a pre-petition encumbrance on the Operating
Assets.[7]  Defendant White Oak will be granted summary judgment to that extent.

_____

[7]Defendant White Oak, as part of an earlier financing deal in Debtor's
bankruptcy case, pledged to transfer $100,000.00 to the Official Committee of

-9-

<u>Defendant Axis Capital, Inc.</u>

With some exceptions and additional elements not relevant here, for a creditor to perfect a secured interest in personal property superior to subsequent encumbrances, the creditor must have an enforceable security agreement and it must have filed a financing statement providing notice to others of its secured interest. *State ex rel. Wagner v. Amwest Surety Ins. Co.*, 790 N.W.2d 866, 870 (Neb. 2010); *American Bank & Trust v. Shaull,* 678 N.W.2d 779, 783-85 (S.D. 2004); U.C.C. §§ 9-203, 310, and 322.[8] Section 9-108 of the Uniform Commercial Code governs how collateral must be described in the security agreement:

> (a) Except as otherwise provided in subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.

> (b) Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:

>> (1) specific listing;

>> (2) category;

---

Unsecured Creditors for payment of wage claims entitled to priority when the sale of the Operating Assets closes (bankr. docs. 321, 360, and 435). The judgment will be without prejudice or peril to that court-approved pledge.

[8]Section 9-301 of the Uniform Commercial Code, as adopted in both Nebraska and South Dakota, provides the law where the collateral is located generally will control. The record indicates Debtor's assets, in which Defendant Axis claims a blanket lien, are all located in South Dakota. Accordingly, it appears South Dakota law applies regarding the perfection of Defendant Axis's secured claim, despite some documents that state Nebraska law applies. However, there are no notable differences between those sections of South Dakota's and Nebraska's Uniform Commercial Codes that are relevant to this adversary proceeding. Therefore, the Court will generally cite to the Uniform Commercial Code.

> (3) except as otherwise provided in subsection (e), a type of collateral defined in the Uniform Commercial Code;
>
> (4) quantity;
>
> (5) computational or allocational formula or procedure; or
>
> (6) except as otherwise provided in subsection (c), any other method, if the identity of the collateral is objectively determinable.
>
> (c) A description of collateral as "all the debtor's assets" or "all the debtor's personal property" or using words of similar import does not reasonably identify the collateral . . . .

U.C.C. § 9-108 (in pertinent part).  The description of collateral in a financing statement is also governed by § 9-108.  U.C.C. § 9-504(1).  However, the collateral description in a financing statement may generally refer to "all assets or all personal property."  U.C.C. § 9-504(2).

The financing agreement between Defendant Axis and Debtor regarding the Ottawa semi-tractor is dated October 22, 2012 and bears the number 925161.  The "Security Interest" paragraph of the financing agreement provides:

> You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the property described or referenced as Collateral and all accessions and additions thereto and replacements thereof and all proceeds and products of the foregoing (collectively, the "Collateral" and individually an "item" or "item of Collateral").  As additional collateral a blanket lien will be placed on the assets of the business and each individual guarantor.  Such security interest is granted to secure payment and performance by you of your obligations hereunder and under any other present or future agreement with us.

The parties also entered into a "CROSS-COLLATERAL AND CROSS-DEFAULT AGREEMENT" dated October 22, 2012.  It is in memo form, addressed to Defendant Axis, and signed by an officer of Debtor.  It provides, in pertinent part:

All presently existing and hereafter acquired Collateral in which you and/or your assignee have or shall have a security interest shall secure the payment and performance of all of our liabilities and obligations to you and/or your assignee of every kind and character, whether joint or several, direct or indirect, absolute or contingent, due or to become due, and whether under presently existing or hereafter created Accounts or agreements, or otherwise.

"Collateral" is essentially defined in the preceding paragraph:

You and/or your assignee has purchased and/or entered into one or more conditional sale contracts, lease agreements, chattel mortgages, security agreements, notes and other choses in action (herein designate[d] "Accounts") arising from the bona fide sale or lease to us, by various vendors or lessors, of equipment and inventory (herein designated "Collateral") and/or you and/or your assignee have made direct loans or leases to or otherwise extended credit to us evidenced by Accounts creating security interests in Collateral.

Defendant Axis's "Equipment Lease Agreement" with Debtor is dated April 30, 2012 and bears the number 924614.  It defines "Equipment" as "the personal property described above and in any schedule signed by the parties and made a part hereof" and uses it as a term of reference in the remainder of the document.  "[T]he personal property described above" is in a section labeled "DESCRIPTION OF LEASED EQUIPMENT," and underneath it states:  "EQUIPMENT DESCRIPTION:  (AND/OR AS DESCRIBED IN INVOICE(S) OR EQUIPMENT LIST ATTACHED HERETO AND MADE A PART HEREOF COLLECTIVELY, THE 'EQUIPMENT')[.]"[9]  Subsequent paragraph "5" provides, in part:

Lessee and Lessor agree and acknowledge that it is the intent of both parties that in the event Article 2A of the Uniform Commercial Code ("UCC") is deemed to be applicable to this Lease, this Lease shall qualify as a statutory finance lease under the UCC.  Lessee acknowledges and agrees that Lessee has selected both:  (1) the Equipment; and (2) the supplier from whom Lessor is to purchase the Equipment.

_____

[9]Why parentheses were used after the colon is unclear.

Paragraph "10" provides:

> All references to "Equipment" shall include software and/or software licenses.  Notwithstanding any contrary language in the Lease, Lessee understands that the Vendor shall continue to retain title to the equipment described as computer software or software license.  The Lessee hereby grants to Lessor a security interest in all of its right, title and interest in and to the Equipment, including the software, as some may be modified, corrected, supplemented or enhanced from time to time.  Lessor shall have all the rights of a secured creditor under the Uniform Commercial Code (the "UCC") with respect to the Equipment.  Lessee shall not be permitted to assign its interest hereunder or sublease said License or use of the Equipment to any other person or entity without both Lessor's and Vendor's prior written consent, which may be declined for any reason.  Lessee shall have no right, title or interest in the Equipment or License except as expressly provided herein and in any license agreement with the Vendor.

Paragraph 25 provides, in part:  "As additional collateral a blanket lien will be placed on the assets of the business and each individual guarantor."  Paragraph 26 states the lease will be construed under the laws of Defendant Axis's principal place of business listed in the agreement, which is Nebraska.

Defendant White Oak attached to its motion for partial summary judgment four UCC financing statements for Defendant Axis.  Defendant Axis's first financing statement, using UCC form 1, is dated May 8, 2012.  The collateral covered is:

> SECURED PARTY HAS A SECURITY INTEREST IN ALL OF THE PERSONAL PROPERTY OF DEBTOR, WHEREVER LOCATED, AND NOW OWNED OR HEREAFTER ACQUIRED, INCLUDING, BUT NOT LIMITED TO, ACCOUNTS, INCLUDING ACCOUNTS RECEIVABLE, FIXTURES, TRADE FIXTURES, CHATTEL PAPER, GOODS, INVENTORY[,] EQUIPMENT, INSTRUMENTS, DOCUMENTS, GENERAL INTANGIBLES, (INCLUDING PAYMENT INTANGIBLES), SUPPORTING OBLIGATIONS, AND, TO THE EXTENT NOT LISTED ABOVE AS ORIGINAL COLLATERAL, PROCEEDS AND PRODUCTS OF THE FOREGOING[.]  ALL DEFINED TERMS ARE AS DEFINED IN THE UNIFORM COMMERCIAL CODE.  THIS INCLUDES, BUT IS NOT LIMITED TO THE EQUIPMENT SUBJECT TO LEASE NO. 924614[.]

Defendant Axis's second financing statement, using UCC form 3, is dated

September 10, 2012.  It is labeled "AMENDMENT."  Section 8, labeled "AMENDMENT

(COLLATERAL CHANGE)," contains a check in the box stating "give entire restated

collateral description," and the amended collateral description is:

> ALL EQUIPMENT NOW OR HEREAFTER ACQUIRED THAT IS COVERED BY ONE OR MORE
> LEASES AND/OR SECURITY AGREEMENTS BETWEEN DEBTOR AND SECURED PARTY
> ENTERED INTO IN THE PAST OR IN THE FUTURE, INCLUDING WITHOUT LIMITATION ALL
> PROCEEDS AND INSURANCE RELATING TO SAID EQUIPMENT AND ALL SUBSTITUTIONS,
> ACCESSIONS, AND REPLACEMENTS RELATING TO SAID EQUIPMENT, NOW OR
> HEREAFTER ACQUIRED.  ALL EQUIPMENT RELATING TO AGREEMENT #924614.

Defendant Axis's third financing statement is dated November 6, 2012.  The collateral

description therein is virtually the same as in the May 8, 2012 statement, except the

referenced lease number is 925161.  Defendant Axis's fourth financing statement is

dated January 10, 2013.  It is denominated an "AMENDMENT."  Section 8, labeled

"AMENDMENT (COLLATERAL CHANGE)," contains a check in the box stating "give

entire restated collateral description," and the amended collateral description is

virtually the same as in the September 10, 2012 financing statement amendment,

except the referenced agreement number is 925161.

The several pieces of equipment Defendant Axis leased to Debtor, as well as

a particular Ottawa semi-tractor Defendant Axis sold to Debtor, were specifically

excluded from the Operating Assets sold at auction (bankr. doc. 598, Exhibit C).

Defendant Axis had earlier obtained relief from the automatic stay regarding the leased

equipment and the semi-tractor (bankr. doc. 597), but reported, in its objection to

Defendant White Oak's motion in the adversary proceeding, that it has not yet sought

actual possession in hopes Defendant White Oak, as the buyer of the Operating

Assets, will want to retain the property for its use (adv. doc. 149).

Defendant White Oak, in its motion for partial summary judgment, indicates Defendant Axis does not have a blanket security interest in the Operating Assets because Defendant Axis filed amended financing statements removing the blanket lien language and narrowing the collateral to specific equipment.  In its reply to Defendant Axis's objection to its motion for partial summary judgment, Defendant White Oak moves away from this argument and instead argues Defendant Axis does not have an enforceable blanket security interest because the security documents contain "a supergeneric description of collateral and, as a result, are insufficient as a matter of law to create *any* blanket lien [emphasis in the original][.]"  The Court finds the first argument dispositive.

Defendant Axis's two amended financing statements, one for agreement no. 924614 regarding the several pieces of equipment Debtor was leasing and the other for agreement no. 925161 regarding the Ottawa semi-tractor Debtor purchased, narrowed the collateral description to only equipment covered now or in the future by a lease or security agreement between it and Debtor.  The amended financing statements did not cover any of Debtor's other personal property.  Defendant Axis's argument that its references in the amended collateral descriptions to "equipment" meant that term as defined by § 9-102(33) of the U.C.C. is for naught.  The language in the collateral description in both amended financing statements is clear—and limited. *Compare, e.g., Official Committee of Unsecured Creditors v. UMB Bank, N.A.* (*In re Residential Capital, LLC*), 501 B.R. 549, 616 (Bankr. S.D.N.Y. 2013) (inconsistency within the U.C.C.-3 raises a red flag for any person conducting a search).

Because Defendant Axis's amended financing statements no longer referenced

any personal property other than personalty covered by agreements between Defendant Axis and Debtor, Defendant Axis did not retain a perfected blanket security interest in Debtor's personal property, including the Operating Assets, that is superior to subsequent encumbrance holders, including Defendant White Oak. Defendant Axis retained a perfected security interest only in the Ottawa semi-tractor and the specific equipment covered by its lease agreement, all property excluded from the Operating Assets. Accordingly, the summary judgment for Defendant White Oak will provide Defendant Axis does not hold a perfected security interest in the personal property within the Operating Assets, and that Defendant Axis's secured interest, to the extent it may be secured by the Operating Assets, is inferior to Defendant White Oak's secured interest.

### Defendant Farnam Street Financial, Inc.

Defendant Farnam Street Financial, Inc. states in its answer that it only leased property to Debtor and does not hold any encumbrance on any estate property, which includes the Operating Assets (adv. doc. 45).[10]  No other party disputes this contention.  Thus, the summary judgment for Defendant White Oak will provide Defendant Farnam Street Financial, Inc. does not hold an encumbrance on the Operating Assets.

### Defendant Harms Oil

Defendant Harms Oil[11] does not claim a secured interest in any estate property

---

[10]Defendant Farnam Street Financial, Inc.'s claim in Debtor's bankruptcy case is consistent with this conclusion (proof of claim 121-1).

[11]Defendant Harms Oil's answer indicates its correct name is Harms Oil Co. (adv. doc. 12).

and says it was only a lessor of property to Debtor.  No other party has disputed that, and so the summary judgment will provide Defendant Harms Oil does not hold an encumbrance on the Operating Assets.

Defendants Magid Glove & Safety Mfg. Co. LLC
and Western Equipment Finance

As noted above, Defendants Magid Glove and Western Equipment did not answer Plaintiffs' complaint or Defendant Scott Olson's crossclaim, and they did not file a response to Defendant White Oak's motion for partial summary judgment.  As also noted above, while an order defaulting them on Defendant Scott Olson's crossclaim has been entered, Plaintiffs' motion for a default judgment against them was denied because Plaintiffs wanted the default judgment to reflect treatment of these defendants' interests that differed from the relief requested in their complaint.

Defendant Magid Glove has filed only a general unsecured claim (proof of claim 107-1), and the personal property supplied by Defendant Magid Glove to Debtor was excluded from the Operating Assets (bankr. doc. 598).  The property in which Defendant Western Equipment claims a secured interest was also specifically excluded from the Operating Assets (bankr. doc. 598 and proof of claim 19-1).  The record, therefore, reflects these defendants do not claim or hold a secured interest in the Operating Assets.  Accordingly, the Court will grant summary judgment to Defendant White Oak to that extent.

Defendant RockTenn CP, LLC

In their complaint, Plaintiffs ask the Court to determine whether Defendant RockTenn has a properly perfected purchase money security interest ("PMSI") in

estate property.   In its answer, Defendant RockTenn claims a PMSI in certain equipment (adv. doc. 47).[12]   The equipment was specifically excluded from the Operating Assets (bankr. doc. 598).   Defendant White Oak, in its motion for partial summary judgment, acknowledges Defendant RockTenn claims a PMSI in certain equipment,[13] but it asks the Court only to find Defendant RockTenn does not have a secured interest in the Operating Assets.   Because there is no dispute regarding that conclusion, summary judgment will be granted to that extent.   Whether Defendant RockTenn has a PMSI in the certain equipment that was excluded from the Operating Assets will still need to be determined within this adversary proceeding.[14]

<u>Defendant Twin City Hide, Inc.</u>

In its answer to Plaintiffs' complaint, Defendant Twin City Hide, Inc. stated it only placed property with Debtor on bailment (adv. doc. 46).   It did not claim an

---

[12]RockTenn's relief from stay motion (bankr. doc. 508) and one of its two claims (proof of claim 123-1) identify the subject equipment as two SSCC VPS30 Trayformers, one SSCC 1517T case erector, one Lantech S300XT stretch wrapper, five Loveshaw LD-16 case sealers, and one Mosca strapper.

[13]Defendant White Oak, in its motion for partial summary judgment, also acknowledges Defendant RockTenn has a relief from stay motion regarding the subject equipment pending in Debtor's bankruptcy case (bankr. doc. 508).   RockTenn, in its relief from stay motion, does not specifically claim a PMSI.   Debtor is the only objector to RockTenn's relief from stay motion (bankr. doc. 574).   Debtor argues RockTenn perfected its secured claim more than 20 days after Debtor received possession of the equipment, and thus RockTenn may not hold a PMSI under S.D.C.L. § 57A-9-324 and another creditor's lien interest may be superior.

[14]Defendant RockTenn's interest in Debtor's real property was addressed in the order regarding Defendant Scott Olson's application for default judgment (adv. doc. 173).

encumbrance on any estate property.[15] No other party disputes this contention. Summary judgment will be granted declaring Defendant Twin City Hide, Inc. does not hold an encumbrance on the Operating Assets.

### Defendant VAR Resources

As was true with Defendants Magid Glove and Western Equipment, Defendant VAR did not answer Plaintiffs' complaint or Defendant Scott Olson's crossclaim, and it did not file a response to Defendant White Oak's motion for partial summary judgment. While an order defaulting it on Defendant Scott Olson's crossclaim has been entered, Plaintiffs' motion for a default judgment against Defendant VAR was denied because Plaintiffs wanted the default judgment to reflect treatment of Defendant VAR's interests that differed from the relief Plaintiffs sought in their complaint.

In their complaint, Plaintiffs state Defendant VAR leased computer software to Debtor, did not file a financing statement, and was owed $20,505.84 on the petition date. In its answer, Debtor says Defendant VAR assigned its lease rights to Defendant Western Equipment and disputes it acknowledged Defendant VAR has a claim for $20,505.84 (adv. doc. 53). In its motion for partial summary judgment, Defendant White Oak referenced Plaintiffs' complaint and Debtor's answer, but did not clearly identify how the record supports either Plaintiffs' or Debtor's declaration. Personal property supplied by Defendant VAR was not specifically excluded from the Operating Assets because Defendant VAR was not listed as a lease holder (bankr. doc. 598).

---

[15]It does not appear Defendant Twin City Hide, Inc. timely filed a proof of claim in Debtor's bankruptcy case.

Documents supporting Defendant Western Equipment's proof of claim 19-1 do include an assignment from Defendant VAR to Defendant Western Equipment, but the Court was unable to discern from the assignment or other parts of the record whether the assignment covered all leases between Debtor and Defendant VAR.   However, because Defendant VAR has not filed a proof of claim, because all the property under the lease assigned from Defendant VAR to Defendant Western Equipment was excluded from the Operating Assets, and because the record does not indicate Defendant VAR ever filed a financing statement covering other personal property, Defendant White Oak will be granted summary judgment declaring Defendant VAR does not hold an encumbrance against the Operating Assets.

An appropriate order will be entered.

Dated:  March 11, 2014.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

**NOTICE OF ENTRY**
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered
on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota